IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Pauline E. Lasher, ) | |
| ) | Civil Action No. 6:06-1681-WMC |
| Plaintiff, ) | |
| ) | **O R D E R** |
| vs. ) | |
| ) | |
| Day & Zimmerman International, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

The plaintiff filed a complaint on September 8, 2005, alleging that, during the year of her employment with Day & Zimmerman International, Inc. ("DZII"), her co-worker Tom Sims and her purported supervisor, Guy Starr, subjected her to sexual harassment, sex discrimination, and intentional infliction of emotional distress. The plaintiff also alleged that DZII negligently hired and retained Sims and that DZII retaliated against her by selecting her for layoff because she purportedly complained of sexual harassment. On September 24, 2007, the Honorable G. Ross Anderson, Jr., United States District Judge, entered an order granting DZII's motion for summary judgment as to the plaintiff's negligent retention and intentional infliction of emotional distress claims, as well as her claim of sexual harassment by Sims. The court denied the motion as to the plaintiff's remaining claims (the retaliation and hostile work environment claims involving Starr).

The case was referred to this court for disposition on March 26, 2008, upon consent of the parties pursuant to Title 28, United States Code, Section 636(c), and Local Rule 73.01(B), DSC, by order of Judge Anderson. A bench trial was held on July 21-22, 2008. On August 13, 2008, this court entered an order finding for the defendant on both of the plaintiff's remaining claims.

On August 27, 2008, the defendant filed a motion for attorney's fees totaling approximately $350,000[1] (def. m. for atty. fees 18). The plaintiff opposes such an award.

Section 706(k) of Title VII provides as follows with regard to the award of attorney's fees:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for the costs as same as a private person.

42 U.S.C. § 2000e-5(k). In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), the Supreme Court ruled that allowance of attorney's fees awards to defendants would serve "to deter the bringing of lawsuits without foundation. . . to discourage frivolous suits. . . (and) to diminish the likelihood of unjustified suits being brought." *Id.* at 420. The Court held that defendants may be awarded attorney's fees in a Title VII case upon a finding "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421. The Fourth Circuit Court of Appeals has stated: "This court has recognized the chilling effect such awards can have on Title VII plaintiffs. District courts should award such fees sparingly and not based upon post hoc reasoning which presumes such an award based upon the outcome of the lawsuit." *Glymph v. Spartanburg General Hosp.*, 783 F.2d 476, 479 (4th Cir. 1986) (citing *Arnold v. Burger King Corp.*, 719 F.2d 63, 65 (4th Cir.1983)).

The defendant argues that the plaintiff's hostile work environment claim was frivolous, unreasonable, or without foundation from the inception of the suit, and further argues that the plaintiff continued to litigate the claim even after evidence was brought forward during the case that confirmed the lack of any basis for the claim (def. m. for atty. fees 11-15). Specifically, the defendant notes that there were only four instances that the plaintiff contended

---

[1] This figure does not include the attorney's fees requested by the defendant with regard to the plaintiff's failure to disclose her personal planners in response to the defendant's discovery requests (def. m. for atty. fees 18 n. 8). On April 21, 2008, this court granted in part the defendant's motion for sanctions on the personal planner issue and awarded attorney's fees and costs associated with the filing of the motion for sanctions, the further discovery necessitated by the late disclosure of documents, and any resulting dispositive motion (4/21/08 order at 2).

2

constituted sexual harassment by Starr. The defendant further notes that the plaintiff, who testified that she made contemporaneous entries into her personal planners, only mentioned Starr about ten times, and none of those entries ever indicated that Starr harassed or upset her. The plaintiff admitted that Starr never commented in front of her that women could not sell in the construction industry and, while the plaintiff complained that Star sent males on sales calls with her, she admitted those accounts were "free game" and that her own witnesses also sent males on sales calls with her. Also, the plaintiff did not mention Starr in her EEOC charge.

The plaintiff argues that, while the court disagreed with her and found for the defendant, the evidence presented at trial illustrates her "substantive concerns that she had been the subject of harassment and retaliation" (pl. resp. m. for atty. fees 5). Specifically, the plaintiff notes that Tex Carter and Hal Bouknight both testified that they had heard Starr comment that women could not sell in the construction industry. They further testified that Starr wanted the plaintiff to be fired. Further, the plaintiff testified that Starr referred to her as a "female door opener" and asked her to submit to a "token interview" for the position.

The defendant argues that the plaintiff was aware from the beginning of her lawsuit that her retaliation claim was frivolous, unreasonable, and without foundation (def. m. for atty. fees 15-17). Specifically, the defendant argues that the plaintiff never complained of any harassing conduct by Starr and that the January 2004 emails addressed only Starr's negativity about a certain sales prospect. The defendant further notes that the plaintiff failed to present any evidence at trial that the decisionmakers had any knowledge of any complaints against Starr.

The plaintiff argues that the court might have rejected the testimonies of Joe Ucciferro and Mick McAreavy that they were unaware of any harassment complaint by the plaintiff against Starr. The plaintiff testified that she was told that there would be no new layoffs, and McAreavy indicated to her that she might be retained. Carter and Bouknight testified that it made no sense to let the plaintiff go. The plaintiff further argues that evidence was presented that a male was hired to do her job within two months of her termination from employment, which made no economic sense since she was given a four-month severance package. According to

3

the plaintiff, "[a] rational finder of fact might have [found] this explanation to be motivated by pretext. And while this Court's findings were contrary, that is not to say that there was not contrary evidence" (pl. resp. m. for atty. fees 12).

This court finds that the while the plaintiff did not prove her claims by a preponderance of the evidence, her claims were not frivolous, unreasonable, or without foundation. Importantly, the plaintiff came forward with evidence supporting her claims as described above. Further, when the defendant moved for summary judgment, United States Magistrate Judge Bruce H. Hendricks recommended that summary judgment be denied on the plaintiff's retaliation and hostile work environment (relating to Starr) claims. Judge Anderson adopted this recommendation and denied summary judgment. At the close of the plaintiff's case, the defendant moved for judgment as a matter of law, which this court took under advisement. At the close of the trial, this court took the matter under consideration and entered a written order considering the plaintiff's claims and deciding against her on the merits of those claims. *Glymph,* 783 F.2d at 479-80 (holding that the district court's finding that a plaintiff's claims were frivolous was undercut by the fact that the defendant's motions for summary judgment and for involuntary dismissal were denied). *See Introcaso v. Cunningham*, 857 F.2d 965, 968 (4th Cir. 1988) (noting that *Glymph* did not set out a *per se* rule on the effect of denial of a directed verdict motion but rather took the ruling into account along with other factors in deciding whether a lawsuit was without merit).

Based upon the foregoing, the defendant's motion for attorney's fees (doc. 160) is denied. The court will address the defendant's bill of costs (doc. 161) and the plaintiff's opposition thereto (doc. 162) by separate order.

IT IS SO ORDERED.

s/William M. Catoe
United States Magistrate Judge

September 16, 2008
Greenville, South Carolina